BROWNFIELD v. SIMON.

(Supreme Court, Special Term, New York County.   April 3, 1916.)

TRADE UNIONS ⊚⟶7—RIGHT TO FUNDS—CHANGE IN ORGANIZATION.

    Plaintiff local union, composed of workmen engaged in the manufacture of men's garments, in 1891, affiliated as Local Union No. 4, United Garment Workers of America, and received a charter providing that a local union might be organized by 7 or more garment workers, which union must apply to the general secretary of the United Workers for a charter, pay the charter fee, and have their application approved by its executive board, and that a local union should not withdraw so long as 7 members thereof objected and were willing to retain the charter, which, in 1906, commenced deposits in a bank, which organized with other unions agreeing to the obligations prescribed by the United Garment Workers of America, which was never dissolved, and 32 of whose members in good standing, though not a majority, opposed affiliation with the Amalgamated Clothing Workers of America, and resolved to retain their original charter, as against a majority of its members affiliating with the Amalgamated Clothing Workers of America was entitled to the deposits, made up of dues, fines, and assessments paid in to the local union, No. 4, of the United Garment Workers of America, by its members, according to the charter and constitution of the United Garment Workers and the union's own constitution.

    [Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 11;  Dec. Dig. ⊚⟶7.]

Suit of Isidore Brownfield, as President of Local Union No. 4, United Garment Workers of America, against Louis Simon, as President of New York Clothing Cutters, Local Union No. 4, a voluntary association affiliated with the Amalgamated Clothing Workers of America.   Judgment for plaintiff.

Nathan Waxman, of New York City (Max D. Steuer, of New York City, of counsel), for plaintiff.

Hillquit & Levene, of New York City, for defendant.

COHALAN, J.   Action, on an agreed state of facts, to determine the ownership of a fund of $7,036.72 on deposit in the Manhattan Savings Institution.   The deposit is credited to the "New York Clothing Cutters, Local Union No. 4."   The plaintiff herein, Local Union No. 4, United Garment Workers of America, is a voluntary unincorporated association, and the defendant Clothing Cutters, Local Union No. 4, is likewise a voluntary unincorporated association.   Each of these organizations claims to be the local union and entitled to the possession of the funds, the subject-matter of the action.

The United Garment Workers of America was organized on the 12th day of April, 1891, and subsequently a charter of affiliation to it was granted by the American Federation of Labor.   The original local trade union, composed of workmen engaged in the manufacture of men's garments in the city of New York, was founded many years ago.   In September, 1863, it affiliated with the Knights of Labor, a national labor organization, but in 1891 it severed its relations with that organization and it became affiliated with the American Federation of Labor.   This local union, on the 12th day of April, 1891,

assisted in the organization of the United Garment Workers of America, and it became affiliated therewith. It in turn at that time received a charter from the latter organization, and this charter has never been revoked or surrendered. On the 21st day of October, 1893, the original local union, with other local unions, organized themselves in New York City as the "Amalgamated Association of Clothing Cutters, Trimmers, Lining Cutters, Bushelmen and Examiners of New York and vicinity." This original local union No. 4 deposited its money in the Manhattan Savings Institution in four separate accounts, commencing on the 8th day of October, 1906, and totaling the sum of $7,036.72. On August 30, 1912, a convention of the United Garment Workers of America was held at Indianapolis, and a staff of general officers was elected, headed by one Thomas A. Rickert as general president. On October 12, 1914, in Nashville, Tenn., another convention was held, and was attended by the delegates from the various local unions accredited thereto. A dispute arose at that convention, many delegates withdrawing therefrom, and holding another convention at the same time and in the same city. The original convention of the United Garment Workers of America re-elected the general officers, including the general president, Thomas A. Rickert. The second convention elected Sidney Hillman as general president, with a regular staff of officers.

In December, 1914, delegates from the local union, which participated in the second convention at Nashville, held a special convention at Webster Hall in this city. These delegates united with the Journeymen Tailors' Union of America and adopted the name of the "Amalgamated Clothing Workers of America." On the 2d day of January, 1915, at Beethoven Hall, in this city, members of the original local union held a meeting and indorsed the action taken at the Webster Hall convention. They voted to the effect that in future the local union No. 4 should be known as "Local Union No. 4, Amalgamated Clothing Workers of America." Many of the members of the original Local Union No. 4 withdrew from the latter meeting, and, with others, thereafter assembled at Arlington Hall. They resolved to retain the charter theretofore issued by the United Garment Workers of America to Local Union No. 4. They further adopted resolutions declaring that the offices of the officers, who had voted in favor of the motion to affiliate Local Union No. 4 with the Amalgamated Workers of America, had become vacant. Newly elected officers were thereupon duly installed. In brief, the members who withdrew from the meeting at Beethoven Hall on January 2, 1915, together with other members, now constitute the plaintiff organization. They have paid their dues, as a local union of the United Garment Workers of America, to the organization presided over by Thomas A. Rickert as general president. The United Garment Workers of America has recognized the plaintiff organization as constituting the Local Union No. 4, which became affiliated with it on April 10, 1891. The members who remained at the meeting in Beethoven Hall on January 2, 1915, constitute the defendant organization herein. This organization has paid dues and has been recognized by the Amalgamated Clothing Workers of America, of which Sidney Hillman is the general president.

The issue is, after all, a simple one. Each of the parties hereto claims that it is the original local union which made the deposit in the Manhattan Savings Institution and is entitled to the possession thereof. I hold that the plaintiff, Local Union No. 4, United Garment Workers of America, has a clear and unbroken title to the money and is entitled to receive the same. The constitution of the United Garment Workers of America, among other provisions, in article 12, section 1, provides that a local union may be organized by 7 or more persons employed in the making of men's, boys' or children's garments; that these unions must apply to the general secretary of the United Garment Workers of America for a charter; that they must pay the charter fee and have their application approved by the general executive board; that a local union shall not withdraw from the United Garment Workers of America, or dissolve, so long as 7 members thereof, at a special meeting called for that purpose, object and are willing to retain the charter, and that three months' notice to the general secretary of withdrawal is required. In article 12, section 3, it is stated that each local union shall have the power to enact and enforce the local constitution and by-laws, provided, however, that they shall not conflict with the constitution of the United Garment Workers of America. Moreover, in section 4 thereof it is set forth that the initiation and installation of the members and officers of the union shall be in accordance with the original manual of the United Garment Workers of America.

It is apparent that at least 32 members of the original local union objected to the withdrawal from the United Garment Workers of America, and that Local Union No. 4 has never been dissolved, nor has any legal attempt ever been made to effect its dissolution. Local Union No. 4 of the United Garment Workers of America, with three other local unions, formed an organization known as the "Amalgamated Association of Clothing Cutters, Trimmers, Lining Cutters, Bushelmen and Examiners of New York and Vicinity." This organization duly adopted a constitution and by-laws for its government. This constitution and by-laws, still in effect, is binding upon all the officers and members of the four local unions of the United Garment Workers of America. It provided in article 1, section 8 thereof, that its members must take the obligations prescribed by the United Garment Workers of America. It is the contention of the defendant that a mere majority of the local union might change its affiliation, and might take its property and funds into a newly affiliated society. Yet it was only by virtue of the charter issued by the United Garment Workers of America to the Local Union No. 4 that the latter could admit members to its organization as a subordinate body of the former organization; the members of the local union were proposed and elected according to the constitution of the parent organization, and the initiation of these members was in accord with its official manual. The desire and intention to carry out the objects of the United Garment Workers of America were the reasons that called the local union into being; these objects were important and of value to its members. They paid their dues into the local union, so that the purposes of the organization might be carried out by the local union. It was the con-

tract of the local union with all its members that the objects of the United Garment Workers of America should be carried out by it. It was not in the power, therefore, of some of the members of the local union, even though in the majority, to compel others in the union to abandon this contract, to assume new relationships, to become subject to an alien constitution, and to carry out the objects of a strange organization.

That a majority of the members present at the Beethoven Hall meeting on January 2, 1915, voted in favor of affiliation with the Amalgamated Clothing Workers of America, and that a majority of all the members of the original local union are now members of the defendant organization, is unimportant with respect to the ownership of these funds. All the members of the original local union came into it as members of the United Garment Workers of America, to accomplish the objects of and to derive the benefits from membership in that organization. The constitution of the parent body provided that the local union could not withdraw from the United Garment Workers of America or dissolve so long as 7 members objected thereto. It is sound in law to hold that the charter and the constitution of the United Garment Workers of America constitute the contract between the latter and the local union, and that these instruments, together with the constitution of the local body, constitute the contract of the members of the local union inter sese. These contracts may not be annulled, nor the property transferred to another organization by a mere majority vote, except under the forms of law. It would require more than a mere consent of a majority of the local union before such a change or transfer of the property could be effected. Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264; Livingston v. Lynch, 4 Johns. Ch. 573; O'Neill v. Delaney, 158 N. Y. Supp. 665; Story's Eq. Jur. §§ 1243, 1256, 1535; 5 Corpus Juris, 1341, 1344, 1338; Grand Court v. Court Cavour, 82 N. J. Eq. 89, 88 Atl. 191; State Council v. Enterprise Council, 75 N. J. Eq. 245, 72 Atl. 19; Spiritual Temple v. Vincent, 127 Wis. 93, 105 N. W. 1026.

A case in point is that of O'Neill v. Delaney, supra. In that case the majority of the members of the original subordinate branch of the Longshoremen's Union voted to withdraw from the parent body and to become an independent organization, with similar purposes. In a suit brought by the president of the original association, containing the members who remained loyal, against the newly created organization to determine the title to moneys on deposit in bank, the court said:

"The defendant's claim that the new organization, 'Local 791,' succeeded to the title to the moneys of 'Branch 2,' cannot be upheld upon the evidence before me. Doubtless all the members of the branch could, by their own act or agreement, apply this fund, which was their own, to any purpose deemed desirable; but a mere majority at a stated meeting could not make a transfer of that fund to another organization in the course of a disruption of the existing body. Their presence and voice had no such efficacy. The branch was organized and the fund collected under an express agreement between its members whereby the organization was to have a definite name and purpose inseparably connected with the Longshoremen's Union—the parent body—to

which it was subservient. Within the express purposes of the organization the members present at a meeting could bind the absentees to the result of a vote taken, but a resolution to end the association itself involved a modification of the very contract under which the meeting, as such, had any significance whatever, and a favorable vote upon that resolution had, of course, no bearing upon the property rights of the members who had not consented to the proposition. Whether mere notice of the purpose of such a meeting would suffice, if given to all members, is a question which does not arise here, since, according to the evidence, notice was not given to all, and title to the fund could not pass to the new organization which the majority of the individuals present at that meeting decided to create."

It is undisputed that the fund in question was made up of dues, fines, and assessments paid into Local Union No. 4 of the United Garment Workers of America by the members thereof. The members of the Clothing Cutters Union Local No. 4 of the Amalgamated Clothing Workers of America, since January 2, 1915, have paid no dues as members of the United Garment Workers of America, and have ceased to be members of the latter organization. It follows that Local Union No. 4 having been organized, and the fund having been collected under an express agreement among its members, whereby the organization was to be inseparably connected with the United Garment Workers of America, to which organization it was subordinate, and it having been established that the members of the plaintiff association have continuously adhered to that agreement, have retained its name, and are carrying out the purposes and objects of Local Union No. 4 as a subordinate body of the United Garment Workers of America, judgment must be awarded to the plaintiff.

Findings passed upon. Decision and judgment may be settled on notice.