Charles M. Hughes, J.
The plaintiff, West Virginia Pulp and Paper Company, has brought an action of interpleader pursuant to section 285 of the Civil Practice Act. The defendants are rival claimants for the same fund. The fund consists of union dues, checked off by the plaintiff, and is claimed by the defendants, A. D. Lewis, as president of District 50, United Mine Workers of America and Nicholas R. Patterson, as temporary administrator of Local 12915. Claim is also made by the defendants, Victor F. Giulianelli and Cosmo De Crescente acting as president and financial secretary, respectively, for an Organizing Committee of Employees of plaintiff’s mill at Mechanicville, New York. The first set of defendants will be referred to as the “ District 50 ”, and the second group as the “ Organizing Committee ”.
The plaintiff, through a collective bargaining agreement, has checked-off union dues pursuant to a contract executed on November 24,1956 between the plaintiff and the defendant District 50, United Mine Workers of America and its Local 12915. The contract is in full force and effect and does not expire until September 27, 1958. The contract provides that the said union is the sole and exclusive bargaining agent for the unit certified by the National Labor Relations Board. The agreement provided that the plaintiff would transmit check-off dues to the financial secretary of Local 12915, District 50, United Mine Workers of America. Since early in 1957, the plaintiff, pursuant to an order of this court, has deposited all such money with the Treasurer of the County of Saratoga.
The proof revealed that on January 9,1957, at a regular meeting of Local 12915, a representative of District 50 stated that the per capita tax payable to District 50 would be increased from $1.50 to $2 per month. This was done pursuant to the rules of District 50 (art. VI, § I). A resolution was then passed to disaffiliate. The resolution was then held in abeyance pending a further report by the representative from District 50. On February 13, 1957, another regular meeting of Local 12915 was held at which time the local was informed that the increase still stood and the local members passed a resolution limiting the per capita tax to $1.50 per month. On February 23,1957, defend *96 ants Victor F. Gtiulianelli, as president of Local 12915, and Cosmo De Creseente, financial secretary of Local 12915, were notified by one John L. Lewis, as president of the United Mine Workers of America, that the local was placed under temporary administration, and that the defendant Patterson was appointed temporary administrator. At a special meeting on February 28, 1957, a meeting of the membership of the local was held in two sections, with a total of 428 members out of a total of some 920, and the membership of the local voted unanimously to disaffiliate from District 50 to form an Organizing Committee to seek affiliation with another international union and to turn over all the property of Local 12915 to the committee. The defendants, G-iulianelli and De Creseente, were elected as president and financial secretary, respectively, of the Organizing Committee.
District 50 and Local 12915 have continued to perform, under the agreement with plaintiff, by holding grievance meetings, job award meetings and regular monthly meetings. The evidence revealed that only a very small minority continued on with Local 12915.
The United Papermakers and Paperworkers (AFL-CIO) filed a petition with the National Labor Relations Board for an immediate election for designation of a new bargaining representative. On October 11, 1957, the National Labor Relations Board dismissed the petition on the ground that the contract between the plaintiff herein, as employer, and the United Mine Workers of America, District 50, and its Local 12915, will not expire until September 27, 1958, is a bar to the said petition. The petition was dismissed £ £ without prejudice to a timely refiling”. United Papermakers and Paperworkers (AFL-CIO) petitioned the National Labor Relations Board for reconsideration of its decision, which petition was denied by the board on December 6,1957.
District 50 claims the subject moneys on the ground that District 50 succeeded to the rights of Local 12915 and that the disaffiliation move caused the assets of the local to pass to the international. This contention is based on the ground that Local 12915 was chartered as part of and is under the jurisdiction of and subject to the laws of the International Union, United Mine Workers of America and the rules of District 50, United Mine Workers of America and it is the sole and exclusive bargaining-representative and contracting party with the plaintiff.
The committee, on the other hand, contends that the membership of Local 12915 disaffiliated and is noAv constituted as the 11 Organizing Committee ’ and, as such, is entitled to check-off *97 dues. It also claims that the administratorship was invalid and void in its inception.
The agreement entered into on November 24, 1956, between the plaintiff, District 50, United Mine Workers of America, and Local 12915, under section 4 of article 2, provided for voluntarily signed authorizations for the deduction of current months’ dues from each employee’s first pay check each month. The authorization provides among its terms that it is irrevocable for a period of one year or for the period of the collective bargaining agreement, whichever is shorter. No evidence was presented that any employee has revoked his authorization in accordance with his written authorization. The plaintiff company, therefore, continues to deduct the monthly dues in accordance with these authorizations and the aforesaid mentioned contract. The members of the disaffiliating group have signed authorizations for their new affiliation in the event of certification, but have not done anything to withdraw the existing authorization, which is being honored by the plaintiff employer in accordance with the existing contract.
The proof established that the membership of Local 12915 voted to disaffiliate and that there was a small minority that subsequently continued to work with the appointed administrator for Local 12915.
The withdrawal of a local labor union as part of its membership from the parent organization produces problems that not only affect the property rights of the local and the international, but also the rights of the employer. It would appear from a reading of the authorities on the subject that the established legal principles in cases of this nature have sought to keep industrial labor strife at a minimum.
District 50, United Mine Workers of America had chartered Local Union 12915 in October, 1945. There is no dispute that District 50, Local 12915 and its members and their respective rights and duties are governed by the international constitution and the rules of District 50, United Mine Workers of America.
The effect of the withdrawal from a parent organization of the whole or portion of the membership of a local labor union upon property rights of such local union is determined by the nature of the contract between the local union and the parent organization as the same is reflected in the constitution, by-laws and rules of organization, and in the terms of the charter granted by it to the local union. (See Alexion v. Hollingsworth, 289 N. Y. 91 [1942]; Brownfield v. Simon, 94 Misc. 720, affd. without opinion 174 App. Div. 872, affd. without opinion 225 N. Y. 643; Steinmiller v. McKeon, 21 N. Y. S. 2d 621, affd. without opinion *98 261 App. Div. 899, motion for reargument denied 261 App. Div. 1073, affd. without opinion 288 N. Y. 508.)
The local union charter granted by the international union together with the international constitution and District 50 rules constitute the contract, that is it establishes the rights and duties between the international, the local union and its members. (See Alexion v. Hollingsworth, supra; Suffridge v. O’Grady, 84 N. Y. S. 2d 211, 219.)
There is no question presented as to the right of any union member of Local 12915 to join or organize another union. -However, there is nothing in this right of union members to select a new bargaining representative which would impair the sanctity of the obligations of the existing contract while that contract was still in force. The employer would be engaging in an unfair labor practice if it were to recognize a noncertified organization such as the Organizing Committee. (See Matter of Triboro Coach Corp. v. State Labor Relations Bd., 286 N. Y. 314.)
The international constitution (art. XIV, § 20), provides that no local union shall be allowed to divide its funds among its members, and section 21 states that if a local union should disband, all property shall be taken over by the international union. The rules of District 50 (art. IV, § I) permit the designation of a representative by the administrative officer of the district to administer the affairs of any local union where it is found to be in the best interests of the membership to do so. Section 6 thereof provides, should any local union for any cause attempt to dissolve, disband or surrender its charter, all money, supplies and property shall be taken over by the international union.
There is no question that the action taken by the membership was an attempt to dissolve or disband the local union. The rules of District 50 further provide that the local funds cannot be divided among the members.
The action of the “ Organizing Committee ” to transfer funds to that group was in effect an attempt to divide the funds among the membership. The loyal minority that continued with Local 12915 had a right to rely on the charter, international constitution and the rules of District 50. The faithful minority of Local 12915 cannot be deprived of their rights by a mere vote of the membership. Each member has an interest in all the assets of the association and in addition has a contractual right to have the assets of the union used only for those purposes for which it was organized. An overwhelming majority of the membership cannot deprive a loyal minority of that interest. (See Alexion v. Hollingsworth, supra; Suff ridge v. O’Grady, supra; Brownfield v. Simon, supra.)
*99 See Wolchok v. Burst (66 N. Y. S. 2d 295) where the court held that where the constitution of the international union provided that assets of the local unions revert to and become property of international when the local ceases to be an affiliate in good standing, the international in an action to recover the local’s assets is entitled to summary judgment.
The plaintiff’s contention that the appointment of a temporary administrator was void from its inception and a denial of due process is without legal foundation. The pleadings have failed to raise any issues of fact or law in this respect. The validity of the action of the international and District 50 has not been properly challenged at any time prior to the bringing or in the pleadings before this court. The presentation of the question in the memorandum submitted to this court does not properly bring the matter before the court.
The third contention of the ‘ ‘ Organizing Committee ’ ’ is that District 50, United Mine Workers of America, has caused a frustration of the contractual relationship between the District 50, United Mine Workers of America, and Local 12915. This principle is applied where the parent organization either severs its ties with an international organization or is for some reason expelled therefrom. The continued existence of the relationship may have been one of the inducements and implied conditions of the local affiliation itself with an intermediate union. The loss of bargaining power of the immediate parent in effect creates a frustration of the contract. (See Clark v. Fitzgerald, 197 Misc. 355.) The case at bar is devoid of any proof whereby this court could arrive at such a determination. The noncompliance by District 50, United Mine Workers of America with certain provisions of the Labor Management Relations Act, 1947 (U. S. Code, tit. 29, § 159, subds. [f], [g], [h]) does not create a frustration of the contract. See Labor Bd. v. Mine Workers (355 U. S. 453 [1958]) wherein it was held that the United Mine Workers of Ajnerica as an assisted but undominated union is entitled to represent its members, and is entitled to National Labor Relations Board certification if so chosen by the workers.
In accordance with this opinion and decision, an order may be submitted granting District 50, United Mine Workers of America and the temporary administrator of Local 12915 the right to the check-off dues to be collected under the present existing contract.
An order may be entered dismissing the cross claim of the “ Organizing Committee ”, without costs.
An order may also be entered discharging the plaintiff from all liability to the defendants herein and that the plaintiff have *100 its costs and disbursements out of the moneys that are the subject of this action.
Orders are to be settled on notice.
(August 5, 1958)
The decision and opinion of this court as rendered on August 1, 1958, in the last paragraph thereof, is hereby amended to read as follows:
‘ ‘ The ‘ Organizing Committee’s ’ contention that the appointment of a temporary administrator was void from its inception, and a denial of due process is without legal foundation.”
The decision and opinion is to remain the same in all other respects.
(August 7, 1958)
The decision and opinion of this court as rendered on August 1, 1958 and as amended on August 5, 1958 in the last paragraph thereof of the opinion dated August 1, 1958, is hereby amended to read as follows:
‘ ‘ An order may also be entered discharging the plaintiff from all liability to the defendants herein and that the plaintiff have its expenses, costs and disbursements as may be just and proper and which may be charged against the subject matter of the action or the amount in dispute in pursuance of Section 285, subdivision 7 of the Civil Practice Act. ’ ’
The decision and opinion is to remain the same in all other respects.